UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEREMY PUTNAM BAKKE,

               Plaintiff,

   v.

TOM TOPAUM,

               Defendant.

CASE NO. 3:16-CV-05598-RBL-DWC

REPORT AND RECOMMENDATION

Noting Date: February 24, 2017

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Plaintiff Jeremy Putnam Bakke, proceeding *pro se* and *in forma pauperis*, initiated this civil rights action on July 7, 2016. Dkt. 1, 5. Presently pending before the Court is Defendant Tom Topaum's Motion for Summary Judgment ("Motion"). Dkt. 35.

The Court concludes Plaintiff has failed to sufficiently rebut Defendant's summary judgment showing regarding both his Fourth Amendment excessive force and Fourteenth Amendment deliberate indifference claims. Accordingly, the Court recommends the Motion be granted.

**BACKGROUND**

Plaintiff alleges his rights were violated when Defendant, a detective with the Vancouver, Washington Police Department, used excessive force during Plaintiff's arrest. Dkt. 5. Plaintiff states Defendant yanked Plaintiff's head around by his long hair and hurt his neck. *Id*. at p. 3. Plaintiff contends he asked for medical attention and Defendant said "no" and also directed the Clark County Jail ("the Jail") staff to deny Plaintiff medical treatment. *Id*. at pp. 4-5.

Defendant filed the Motion on December 15, 2016. Dkt. 35. In support of his Motion, Defendant submitted his own declaration, the declarations of Janell Cusick and Alva Songer, excerpts of the trial transcript from Plaintiff's criminal trial, and portions of Plaintiff's Clark County Jail records. *See* Dkt. 36-39. Plaintiff did not file a response to the Motion; however, Plaintiff's Complaint was signed under penalty of perjury and is being considered as evidence. *See* Dkt. 5.[1] Defendant filed a reply on January 13, 2017. Dkt. 42.

**STANDARD OF REVIEW**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[1] Because Plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (*citing Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997).

As the party moving for summary judgment, Defendant has the initial burden to demonstrate no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Mere disagreement or the bald assertion stating a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 290 (1986); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a

1  material issue of fact precludes the use of summary judgment."). In other words, the purpose of

2  summary judgment "is not to replace conclusory allegations of the complaint or answer with

3  conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888

4  (1990). "If a party fails to properly support an assertion of fact or fails to properly address

5  another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary

6  judgment if the motion and supporting materials--including the facts considered undisputed--

7  show that the movant is entitled to it[.]" Fed R. Civ. P. 56(e)(3).

8                                        **DISCUSSION**

9          In the Complaint, Plaintiff alleges Defendant violated Plaintiff's: (1) Fourth Amendment

10  rights when he used excessive force while arresting Plaintiff; and (2) Fourteenth Amendment

11  rights when he denied Plaintiff medical treatment. *See* Dkt. 5.

12  **I.      Fourth Amendment Claim**

13          Plaintiff contends Defendant violated his Fourth Amendment right to be free from

14  excessive force during an arrest. Dkt. 5.

15          A.   Legal Standard

16          In the Ninth Circuit, courts "analyze all claims of excessive force that arise during or

17  before arrest under the Fourth Amendment's reasonableness standard[.]" *Coles v. Eagle*, 704

18  F.3d 624, 627 (9th Cir. 2012) (*citing Graham v. Connor*, 490 U.S. 386 (1989)). "[T]he

19  'reasonableness' inquiry in an excessive force case is an objective one: the question is whether

20  the officers' actions are 'objectively reasonable' in light of the facts and circumstances

21  confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at

22  397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a

23  reasonable officer on the scene, rather than with 20/20 vision in hindsight." *Id*. at 396 (*citing*

24

*Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) (*citing Graham*, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

To determine whether an officer used excessive force, the nature and quality of the intrusion must be weighed against the countervailing governmental interest in the use of that force. *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001). The Court considers the following factors in its analysis: (1) the severity of the crime or situation to which the officer was responding; (2) whether the plaintiff posed an immediate threat to the safety of the officer or others; (3) whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight; (4) the amount of time and any changing circumstances during which the officer had to determine the type and amount of force that appeared to be necessary; and (5) the availability of alternative methods to subdue the plaintiff. *Smith v. City of Hemet,* 394 F.3d 689, 701 (9th Cir. 2005); *see Graham,* 490 U.S. at 397. Because the balancing of these factors "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom ... summary judgment [ ] in excessive force cases should be granted sparingly." *Coles*, 704 F.2d at 628.

B.  Factual Evidence

The evidence shows, on November 29, 2013, Defendant was investigating an auto prowl incident. *See* Dkt. 37-1, Defendant Dec., Exhibit 1. Plaintiff was in a vehicle matching the

description of the vehicle involved in the auto prowl. *Id*. Defendant and non-party Officer Janell Cusick approached Plaintiff, asked him to exit the vehicle, handcuffed him, and detained him on suspicion of auto prowl. *See id*.; Dkt. 36-1, pp. 9, 12. Plaintiff was identified and it was determined there was an outstanding warrant for his arrest. *Id*. at p. 12; Dkt. 38-1, Cusick Dec., Exhibit 1. When Plaintiff was placed under arrest, he became very upset. Dkt. 36-1, p. 12. He began cussing, attempted to turn around during a search of his person, and threatened the officers. *Id*.; Cusick Dec., Exhibit 1. Because Plaintiff began turning around and stepping backwards towards Officer Cusick, two additional officers assisted Officer Cusick in holding and restraining Plaintiff while he was searched. Dkt. 36-1, p. 12; Dkt. 38-1, Cusick Dec., Exhibit 1.

After Plaintiff was searched, an officer arrived at the scene of the arrest with the victim of the auto prowl. Dkt. 38-1; Dkt. 36-1, pp. 15-16. Officer Cusick explained, in order to properly identify a suspect, officers will bring the victim to the scene and an officer will turn the suspect's head in the direction of the victim so the victim can clearly identify the suspect. Dkt. 36-1, p. 25. According to Officer Cusick's training, if a suspect is uncooperative and the officer needs the suspect to look in a specific direction without exposing the victim, the officer can use force as necessary to assist the suspect. *Id*. at p. 26. If an officer must use force to get a suspect to look in the necessary direction, the officer can hold the suspect's head, but risks getting bit if the officer grabs too closely to the mouth. *Id*.

Here, the victim of the auto prowl arrived at the scene to identify Plaintiff. *See id*. at pp. 24-25. Plaintiff "was not cooperative, didn't want to turn, didn't want to look in the direction [the officers'] were asking him to look, so . . . [Defendant] had to grab onto the back of [Plaintiff's] head to turn his head in the direction to face the victim." *Id*. at p. 25. Officer Cusick further clarified Defendant held on to Plaintiff's ponytail. Dkt. 36-1, p. 25; *see also* Dkt. 38-1.

Defendant states he did not use force, just firmly grabbed Plaintiff's ponytail to turn his head. Dkt. 36-1, p. 44. There was no other action he could have taken for identification purposes which would not have been as physically forceful. *Id.* at p. 44. The evidence shows every situation is different and, in the situation with Plaintiff, turning Plaintiff's head by his ponytail worked for identification by the victim. *See id.* at pp. 44-45.

    C. <u>Analysis</u>

        The evidence shows Defendant firmly grabbed Plaintiff's ponytail and turned Plaintiff's head in the direction the police officers needed Plaintiff to look. At the time of the use of force, Plaintiff was uncooperative, resisting, and refusing to follow the commands of the police officers. The evidence also shows there were no alternative methods available to prevent the use of force in this situation. Plaintiff's sole allegation that Defendant "yanked" his ponytail is not sufficient to overcome Defendant's evidence. *See Celotex*, 477 U.S. at 324 (summary judgment may not be opposed merely by the pleadings).

        Viewing the situation as a whole, the evidence fails to show Defendant's use of force to turn Plaintiff's head was objectively unreasonable. *See Burns v. City of Redwood City*, 737 F.Supp.2d 1047, 1061 (N.D. Cal. 2010) (finding an officer did not employ constitutionally excessive force when he pulled the arrestee's head and neck to cause pain until the arrestee was handcuffed); *Brooks v City of Seattle*, 599 F.3d 1018, 1026 (9th Cir. 2006) (discussing how hair control grip may be appropriate to control a suspect who refused to exit a vehicle following a traffic stop). Accordingly, Plaintiff's excessive force claim does not survive Defendant's summary judgment showing.

## II.      Fourteenth Amendment Claim

Plaintiff contends Defendant violated his Fourteenth Amendment rights when Defendant denied Plaintiff medical care and instructed jail officials to deny Plaintiff medical care. Dkt. 5.

A.  <u>Legal Standard</u>

The evidence shows Plaintiff was a pretrial detainee when he was allegedly denied medical care. *See* Dkt. 5. As such, conditions of confinement imposed on him are governed by the Fourteenth Amendment Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). "Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, we apply the same standards." *Frost*, 152 F.3d at 1128; *Redman v. County of San Diego*, 942 F.2d 1435, 1441 (9th Cir. 1991); *see also Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010).

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment medical claim has two elements: (1) "the seriousness of the prisoner's medical need and [(2)] the nature of the defendant's response to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (*quoting Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a

medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059-1060.

If a plaintiff shows he suffered from a serious medical need, he must then show the prison officials responded to the need with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1970). Deliberate indifference to a prisoner's serious medical need requires "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id*. A prison official, accordingly, will not be found deliberately indifferent to a prisoner's serious medical needs "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

B.  Factual Evidence

In the Complaint, Plaintiff's states he asked Defendant for medical attention during the arrest, Defendant denied Plaintiff's request and pushed him into the police car. Dkt. 5, pp. 3-4. At booking, Plaintiff again requested medical attention and was told Defendant informed the booking officers Plaintiff did not need medical attention. *Id*. at pp. 4-5. The intake nurse also stopped providing Plaintiff treatment because Defendant told the booking officers to not give Plaintiff medical treatment. *Id*. at p. 5.

To refute Plaintiff's allegations, Defendant provided the following evidence: Plaintiff was uncooperative, verbally abusive, and physically aggressive toward Defendant and other officers. Dkt. 37, Defendant Dec., ¶ 4; Dkt. 38, Cusick Dec., ¶ 5. Throughout his arrest and

1  booking, Plaintiff never asked for medical care or said he needed medical attention. Dkt. 37,

2  Defendant Dec., ¶ 4. Defendant testified Plaintiff did not "complain about any injury resulting

3  from his arrest or show any sign of being injured or needing medical attention." *Id*. Defendant

4  also "did not tell booking officers or the jail nurse to deny [Plaintiff] medical care." *Id*. at ¶ 5.

5      Officer Cusick was with Defendant from the time Defendant first approached Plaintiff

6  through his arrest and booking into the Jail. Dkt. 38, Cusick Dec., ¶ 2. Officer Cusick never

7  heard Defendant "tell anyone to refuse [Plaintiff] medical care. [Plaintiff] never asked for

8  medical care or said he needed medical attention. At no time did [Plaintiff] complain about any

9  sort of injury resulting from his arrest or show any sign of being injured or needing medical

10 attention." *Id*. at ¶ 5.

11     After Plaintiff was placed under arrest, Defendant and Officer Cusick transported

12 Plaintiff to the Jail. Dkt. 37, Defendant Dec., Exhibit 1; Dkt. 38, Cusick Dec., Exhibit 1. He

13 arrived at the Jail at approximately 11:30 p.m. on November 29, 2013. *See* Dkt. 39, Songer Dec.,

14 Exhibit 1. Plaintiff continued to resist the officers and was placed in restraints and escorted to his

15 cell. *See id*. at ¶ 2, Exhibit 1. Plaintiff was seen by non-party Heidi Dempster for a medical

16 intake screening the next morning, November 30, 2013, at 10:48 a.m. *See* Dkt. 36-3, p. 12.

17     C.   <u>Analysis</u>

18     Regardless of whether the evidence shows Plaintiff was suffering from a serious medical

19 need, Plaintiff failed to sufficiently rebut Defendant's showing that Defendant did not act with

20 deliberate indifference to Plaintiff's serious medical need. Plaintiff provides one vague allegation

21 stating he asked Defendant for medical attention. *See* Dkt. 5. Plaintiff does not allege he

22 explained his medical needs to Defendant or allege he complained of his neck pain to Defendant.

23 *See* Dkt. 5. Defendant and Officer Cusick submitted declarations showing Defendant was

24

1   unaware Plaintiff was suffering from a serious medical need. Neither Defendant nor Officer

2   Cusick heard Plaintiff complain of any injury resulting from the arrest, ask for medical care, or

3   show signs of being injured or needing medical attention. Further, within twelve hours of

4   arriving at the Jail, Plaintiff received a medical intake screening. Plaintiff's single allegation

5   stating he asked Defendant for medical attention fails to overcome Defendant's showing that he

6   did not have knowledge of and purposefully fail to respond to Plaintiff's serious medical need.

7   *See Farmer*, 511 U.S. at 838 (a prison "official's failure to alleviate a significant risk he should

8   have perceived but did not" cannot "be condemned as the infliction of punishment"); *Wereb v.*

9   *Maui County*, 727 F.Supp.2d 898, 914-16 (D. Hawai'i 2010) (finding no evidence to show the

10   defendants were subjectively aware of a serious medical need when the defendants stated they

11   did not believe the plaintiff needed medical attention); *Franklin v. Murphy*, 745 F.2d 1221, 1235

12   (9th Cir. 1984) (stating a pro se prisoner plaintiff "may not rely solely on the allegations in his

13   pleadings, he must present some significant probative evidence tending to support the complaint"

14   to avoid summary judgment (internal quotations omitted)).

15        As Plaintiff has not submitted evidence refuting Defendant's showing he was not

16   deliberately indifferent to a serious medical need, no genuine issue of fact remains. Accordingly,

17   Plaintiff's claim of deliberate indifference to a serious medical need cannot survive Defendant's

18   summary judgment showing.

19                     **CONCLUSION**

20        Based on the foregoing, the undersigned recommends Defendant's Motion be granted and

21   this case be closed. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall

22   have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R.

23   Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de*

24

*novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on February 24, 2017, as noted in the caption.

Dated this 8th day of February, 2017.

David W. Christel
United States Magistrate Judge